**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 14-cr-00160-PAB-01

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  DONALD BRIAN WINBERG,

    Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SUPERSEDING MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c) [Doc. # 274]**

---

The United States of America, by and through Jason R. Dunn, United States Attorney for the District of Colorado and Patricia Davies, Assistant United States Attorney, hereby responds to the defendant's Superseding Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c) ("Motion"). [Doc. # 274].[1]

The defendant's Motion is based on his claims that he faces heightened risks from the COVID-19 virus due to his medical conditions, including Type II diabetes, hypertension, obesity, and other issues. He also argues that he has completed the majority of his sentence of imprisonment, is a non-violent offender, is at low risk for re-offending, and will be supervised

---

[1] The defendant initially sought early release in a *pro se* submission [Doc. # 272]. Appointed counsel subsequently filed the instant Motion. [Docs. ## 273, 274]. Defendant then filed a second *pro se* request for relief, which this Court struck in light of the pending Motion. [Docs. ## 277, 278]. The government now responds to the Motion, and in so doing, responds to all substantive bases advanced for the requested relief.

after his release. Thus, he argues that the risks he faces from COVID-19 warrant compassionate release under the sentencing considerations of 18 U.S.C. § 3553(a).

## The Government's Position

The government has some concerns about early release for this defendant but concludes that under the narrow and unique circumstances here, it does not object to this Court granting the Motion. The government's reservations are based on the following factors:

(1) The Bureau of Prisons has instituted extensive protections to address the risks posed by COVID-19, as described below. These protections mitigate against the risks that the Motion claims.

(2) FCI Sheridan continues to have only one (1) confirmed case of a COVID-19 infected inmate. Defendant's Motion states that he faces substantial risks to his health but the fact that from the time of his *pro se* submission, dated June 22, 2020, through the time of this filing on July 20, 2020, no additional cases have developed at FCI Sheridan belies the severe risk to the defendant that the Motion claims.[2]

(3) This defendant was convicted of and sentenced for two successive frauds. The second fraud was committed during his prosecution for the first fraud, and while he was being supervised by the United States Probation Office, Pretrial Services Division, under conditions akin to those he claims will prevent his recidivism if the Motion is granted. [Doc. # 274 at 2, 12 (claiming the imposed supervised release conditions will prevent re-offending); *compare* Doc. # 111, pg. 12 (pre-trial bond conditions in place

---

[2] Defendant's *pro se* submission is dated June 22, 2020, and was filed on June 29, 2020. [Doc. # 272]. As to the current status of COVID-19 cases at FCI Sheridan, on July 20, 2020, the government reviewed current information available at https://www.bop.gov/coronavirus. The government also confirmed with a Bureau of Prisons ("BOP") representative on July 20, 2020, that COVID-19 case information at BOP facilities is updated daily.

while defendant committed additional fraud) with Doc. # 145, pg. 4 (J&C special supervision provisions)].[3] As such, the government submits that the defendant poses some economic danger that may be accelerated if the Motion is granted.

Nonetheless, the government agrees with other aspects of the Motion. The defendant has apparently satisfied the jurisdictional requirement by seeking relief from the warden at FCI Sheridan.[4] The defendant has medical conditions that are recognized as increasing the risks posed by COVID-19. [Doc. # 274, Exh. 1][5]. The defendant has minimal disciplinary history at FCI Sheridan. [Doc. # 274, Exh. 2]. And, most importantly, the defendant has served over 74.7% of his imprisonment, and is eligible for home confinement beginning in October 2020. [Exhibit A, hereto].

Under these unique circumstances, the government does not object to the granting of this Motion. Simply stated, the modicum of benefit achieved by the defendant remaining in custody for less than three additional months does not outweigh even potentially minor risks to the defendant based on his medical conditions and possible exposure.

### The BOP's Response to COVID-19 Mitigates Risk

In response to the COVID-19 pandemic, BOP has taken significant measures to protect the health of the inmates in its charge, which is one of its highest priorities. Indeed, BOP has had

---

[3] The government notes that the additional search provision added to the defendant's supervised release conditions in March 2020 differs from the defendant's pretrial supervision conditions. [Doc. # 271].

[4] The Court may modify a defendant's term of imprisonment only after the defendant "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of thirty days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

[5] BOP records reflect that the defendant has received prescription medications for diabetes, high blood pressure and elevated cholesterol. [Doc. # 274, Exh. 1]. Under guidance from the CDC, the defendant's Type II diabetes and claimed obesity are recognized risk factors. The Motion claims that other medical issues afflict the defendant and that they, too might increase his risks. Those other conditions and any resulting elevated risks are not sufficiently demonstrated in the government's view but do not appear to require resolution for this Motion.

a Pandemic Influenza Plan in place since 2012. BOP Health Services Division, Pandemic Influenza Plan-Module 1: Surveillance and Infection Control (Oct. 2012), available at https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf. That protocol is lengthy and detailed, establishing a six-phase framework requiring BOP facilities to begin preparations when there is first a "[s]uspected human outbreak overseas." *Id.* at i. The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates.

Consistent with that plan, BOP began planning for potential coronavirus transmissions in January. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control, including by reviewing guidance from the World Health Organization.

On March 13, 2020, BOP began to modify its operations, in accordance with its Coronavirus (COVID-19) Action Plan ("Action Plan"), to minimize the risk of COVID-19 transmission into and inside its facilities, including at the defendant's facility. Since that time, as events require, BOP has repeatedly revised the Action Plan to address the crisis. Under the phase of the Action Plan currently in effect, only limited group gathering is afforded, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited the movement of inmates and detainees among its facilities. Though there will be exceptions for medical treatment and similar exigencies, this step as well will limit transmissions of the disease. Likewise, all official staff travel has been cancelled, as has most staff training.

4

All staff and inmates have been and will continue to be issued face masks and strongly encouraged to wear an appropriate face covering when in public areas when social distancing cannot be achieved.

Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with risk of exposure are placed in quarantine for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation.

Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened for symptoms and risk factors.

Social and legal visits were stopped as of March 13, and remain suspended until at least June 30, 2020, to limit the number of people entering the facility and interacting with inmates. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended. Legal visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff. Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

Taken together, all of these measures are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution. BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

### Additional Facts Specific to FCI Sheridan

According to BOP data, FCI Sheridan still has one (1) case of COVID-19. *See* www.bop.gov/coronavirus/. The affected inmate has been isolated, and will remain so until the inmate has a negative test for COVID-19. FCI Sheridan follows the BOP protocols noted above.

The fact that there remains only one confirmed case of infection at FCI Sheridan since the time that the defendant filed his *pro se* request on June 22, 2020, reflects the effectiveness of BOP efforts to protect inmates and its staff from COVID-19.

### Legal Framework for the Motion

Under the First Step Act, the Court may grant the defendant's motion for reduction of sentence "if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The proposed sentencing reduction must he consistent with "the factors set forth in section 3553(a)." *Id.* In general, the defendant has the burden to show circumstances meeting the test for compassionate release. *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (unpublished). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 2019 WL 2403192, at *3 (D.N.M. June 7, 2019) (unpublished) (citations omitted).

Currently, the Department of Justice is taking the position that the presence of a COVID-19 risk factor that is confirmed by BOP medical records meets the threshold requirement of presenting an "extraordinary and compelling" reason under the First Step Act. In ruling on the Motion, the Court should balance the precautions that the BOP is taking to mitigate the risk of COVID-19, the danger of releasing the defendant to the community, and the sentencing factors set forth under 18 U.S.C. § 3553(a).

Even where a defendant meets the threshold conditions for compassionate release, the decision to grant or deny a request for reduction in sentence remains discretionary. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.").

Here, the Court should view the risks to defendant described in the Motion in light of the effective measures that BOP has taken to mitigate the risk of COVID-19, the very low incidence of infection at FCI Sheridan, and the sentencing factors under Section 3553(a). *See e.g.*, *United States v. Israel*, 2019 WL 6702522, at *2 (S.D.N.Y. Dec. 9, 2019) (unpublished). This Court can properly consider that the defendant engaged in two successive conspiracies to commit wire fraud, with the second fraud scheme occurring while he was under pre-trial supervision during prosecution for the first fraud scheme. [Docs. ## 111 (Plea Agreement); 145 (J&C)]. Those schemes ultimately harmed more than a dozen victims and caused losses exceeding $1.5 million. [Doc. # 135 & Doc. # 135, Ex. B (letters from victims)]. Defendant was sentenced to 87 months' imprisonment.

This defendant has now served over 74% of his BOP imprisonment.[6] His crimes wrought great damage to his victims but even without the Motion, this defendant is eligible for home confinement in October 2020. Thus, for the reasons stated in the Motion and acknowledged above, under these unique facts, the government does not believe that principles of Section 3553(a) will be offended by this Court granting the Motion.

### Conclusion

Based on the foregoing, the government submits that this Court may properly grant the defendant relief to avoid any risk, however slight, that he may face as an inmate, with his particular medical conditions, at FCI Sheridan. However, the government requests that the Court structure relief to the defendant as follows:

(1)     Should the Court grant release, the government requests that it accommodate the need to quarantine the defendant for a period of at least 14 days in order to protect public health. The government further requests that the Court retain jurisdiction over the motion for 14 days if it makes a determination to grant release, while advising the parties of that decision. BOP will then place the inmate in quarantine. If the defendant has not displayed symptoms or tested positive for COVID-19 for a period of 14 days, the Court may then order release. If the defendant tests positive during the initial 14-day period, the government will notify the Court and seek an extension of the release date until the defendant has tested negative.

---

[6] *See* Exhibit A. This calculation was as of July 7, 2020.

(2) Order that the defendant's sentence is "time served," and that his supervised release conditions are amended to include a period of home confinement, at the direction of the United States Probation Office.

Respectfully submitted this 20th day of July, 2020.

                                                JASON R. DUNN
                                                United States Attorney

                                                By: */s/ Patricia Davies*
                                                Patricia Davies
                                                Assistant United States Attorney
                                                United States Attorney's Office
                                                1801 California Street, Suite 1600
                                                Denver, Colorado 80202
                                                Telephone: (303) 454-0100
                                                Fax: (303) 454-0405
                                                E-mail: Patricia.Davies@usdoj.gov
                                                Attorney for the United States

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of July, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/ <i>Amy McDaniel</i><br>
Amy McDaniel<br>
Legal Assistant<br>
U.S. Attorney's Office