IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 14-cr-00160-PAB-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. DONALD BRIAN WINBERG,

    Defendant.

_____

**ORDER**
_____

This matter is before the Court on the Superseding Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c) [Docket No. 274] filed by defendant Donald Winberg. The government has filed a response stating that it does not object to Mr. Winberg's motion. Docket No. 279 at 2-3.

**I.  BACKGROUND**

On April 16, 2015, Mr. Winberg pled guilty to two counts of conspiracy to commit wire fraud, 18 U.S.C. § 1349. *See* Docket No. 110; Docket No. 111; Docket No. 145 at 1. On August 14, 2015, the Court sentenced him to 87 months incarceration followed by three years of supervised release. Docket No. 145 at 1-2  Mr. Winberg was also required to pay $1,541,689.90 in restitution to his victims. *Id.* at 5. He has served roughly 75% of his sentence and is eligible for home confinement on October 10, 2020. Docket No. 279 at 3 (citing Docket No. 279-1 at 3). Mr. Winberg is currently

incarcerated at the Federal Correctional Institution in Sheridan, Oregon ("FCI Sheridan").

On July 9, 2020, Mr. Winberg filed the instant motion, requesting that his sentence of incarceration be reduced to time served. Docket No. 274 at 1. Mr. Winberg represents that he is at a heightened risk of serious complications from COVID-19 due to several health conditions. *Id*. at 5-6; *see generally* Docket No. 274-1 (medical records). Mr. Winberg suffers from type 2 diabetes, is a patient at the diabetic Chronic Care Clinic at FCI Sheridan, and takes metformin for his diabetes. Docket No. 274 at 5. Additionally, Mr. Winberg states that he has a body mass index of over 30 and suffers from hypertension. *Id.* at 5-6.

## II. ANALYSIS

Under § 3582(c)(1)(A)(i), known as the "compassionate release" provision, "a district court may grant a sentence reduction if, after considering the 18 U.S.C. § 3553(a) sentencing factors, it finds that 'extraordinary and compelling reasons warrant such a reduction' and the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (unpublished) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). A district court may grant a sentence reduction upon motion of the defendant only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). That requirement is satisfied here. Mr. Winberg

mailed his request by certified mail to the warden at FCI Sheridan on May 21, 2020. Docket No. 272 at 13. As a result, more than thirty days have elapsed from the date Mr. Winberg filed his motion.

### A. Extraordinary and Compelling Reasons

The Sentencing Commission has identified four categories of extraordinary and compelling reasons that may warrant a sentence reduction: (A) medical condition of the defendant; (B) age of the defendant; (C) family circumstances; and (D) other reasons. *See* United States Sentencing Comm'n, § 1B1.13, cmt. 1, Guidelines Manual (2018). Mr. Winberg argues that his medical conditions – specifically, type 2 diabetes, hypertension, and obesity – in combination with the COVID-19 pandemic qualify as extraordinary and compelling reasons for a sentence reduction. Docket No. 274 at 3-5. The Sentencing Commission has explained that a defendant's medical condition may be an extraordinary and compelling reason where:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*See* U.S.S.G. § 1B1.13, cmt. 1(A).

Other district courts have concluded that diabetes, within the context of the COVID-19 pandemic, qualifies as a serious medical condition under this policy statement. *See, e.g.*, *United States v. Lopez*, 2020 WL 2489746, at *3 (D.N.M. May 14, 2020) (concluding that 62-year-old defendant with high blood pressure and type II diabetes had shown "extraordinary and compelling reasons" warranting compassionate release); *United States v. Al-Jumail*, 2020 WL 2395224, at *6 (E.D. Mich. May 12, 2020) (concluding that 60-year-old defendant with diabetes and chronic arterial disease meets the definition of U.S.S.G. § 1B1.13, cmt. 1(A)(ii)); *United States v. Colvin*, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) (holding that diabetes is a "serious . . . medical condition, which substantially increases [defendant's] risk of severe illness if [defendant] contracts COVID-19" and granting compassionate release (internal quotation omitted)); *United States v. Rodriguez*, 2020 WL 1627331, at *8 (E.D. Pa. Apr. 1, 2020) (concluding that prison "is a particularly dangerous place" for an individual with diabetes). In addition to type II diabetes, Mr. Winberg also suffers from obesity and hypertension, which the Centers for Disease Control have stated can increase the risk for severe complications from COVID-19. *People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated July 30, 2020). However, hypertension on its own is not necessarily an independent risk factor. Although pulmonary hypertension is a risk factor, *id.*, hypertension without other risk factors may not lead to increased risk

of severe complications from COVID-19. *See Patients with Hypertension*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Patients-with-Hypertension (last updated Aug. 4, 2020). Nevertheless, the combination of Mr. Winberg's medical issues – diabetes, obesity, and hypertension – places him at risk for severe complications from COVID-19. The government concedes that Mr. Winberg's medical conditions "meet[] the threshold requirement of presenting an 'extraordinary and compelling' reason under the First Step Act." Docket No. 279 at 7. Accordingly, the Court finds that Mr. Winberg has demonstrated an extraordinary and compelling reason warranting a sentence reduction.

### B.   Section § 3553(a) Factors

Next, the Court must consider whether the factors outlined in 18 U.S.C. § 3553(a) support a sentence of time served.

Sections 3553(a)(2)(A) and (B) require the Court to consider "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, [] to provide just punishment for the offense, [and] to afford adequate deterrence to criminal conduct." Mr. Winberg's crimes were serious, something that he does not contest. Docket No. 274 at 11. As the Court noted at sentencing, this was not a typical embezzlement scheme; Mr. Winberg had no intention to pay back his victims, and "[h]e preyed upon people who he knew were trusting people." Docket No. 200 at 37, 39.

However, in terms of affording adequate deterrence to others, it is unlikely that would-be embezzlers would commit crimes hoping that a global pandemic and documented health risks would offer them early relief from incarceration.

Additionally, although there is some concern that Mr. Winberg could post some economic danger to the community, there is no reason to believe that he poses any physical danger. He has little to no disciplinary history at FCI Sheridan, has no prior felonies, and, although his offenses were serious, they did not involve violence. The government, although it does not oppose Mr. Winberg's release, notes that Mr. Winberg committed his second felony while being prosecuted for the first. Docket No. 279 at 2. As a result, the government believes Mr. Winberg represents some economic danger to the community. *Id.* at 2-3. However, as the government states, these are unique circumstances. *Id.* at 3. Most importantly, Mr. Winberg has served nearly 75% of his incarceration. The Court thus finds that it is unlikely, given that Mr. Winberg has served a significant majority of his term, that there is a risk of further economic harm.

The most important § 3553(a) factor regarding Mr. Winberg's motion is the need for a sentence that provides "just punishment for the offense." The Court must balance this need for just punishment against the risk that COVID-19 poses to Mr. Winberg's health given his serious underlying health conditions. The Court is not persuaded that ordering Mr. Winberg to remain in prison is appropriate when he has served 75% of his sentence, would soon be eligible for home confinement, and the government concedes that there are extraordinary and compelling reasons to release Mr. Winberg from prison.

In sum, given Mr. Winberg's underlying conditions, the COVID-19 pandemic, the length of time served, and Mr. Winberg's eligibility for home confinement in October,

reducing Mr. Winberg's sentence to time served is sufficient, but not greater than necessary, to accomplish the goals of sentencing established by 18 U.S.C § 3553(a).

### C.   Supervised Release

Section 3582(c)(1)(A) allows the Court, if it grants a motion for a sentence reduction, to "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." Here, the "unserved portion of the original term of imprisonment" is approximately 24 months. The Court finds it appropriate to extend Mr. Winberg's term of supervised release, which was initially three years, to five years.

### D.   14-Day Quarantine

The government requests that the Court order Mr. Winberg to quarantine for 14-days before release. Docket No. 279 at 8. However, the government has not provided information regarding FCI Sheridan's current protocols for releasing inmates. As a result, the Court will not order FCI Sheridan to release Mr. Winberg on terms that may differ from how FCI Sheridan is currently releasing inmates.

### III.   CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant Donald Brian Winberg's Superseding Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c) [Docket No. 274] is **GRANTED**. It is further

**ORDERED** that the defendant's sentence of incarceration is reduced to time served on all counts pursuant to 18 U.S.C. § 3582(c)(1)(A)(I). It is further

Case 1:14-cr-00160-PAB   Document 282   Filed 08/10/20   USDC Colorado   Page 8 of 8

**ORDERED** that, there being a verified residence and an appropriate release plan in place, this order is stayed for up to fourteen days to make appropriate travel arrangements and to ensure the defendant's safe release. It is further

**ORDERED** that, pursuant to 18 U.S.C. § 3582(c)(1)(A), the defendant is ordered to serve a "special term" of supervised release of 24 months consecutive to the originally imposed term of 36 months of supervised release. The conditions of the "special term" of supervision shall be the same as those set out in the Judgment [Docket No. 145]. It is further

**ORDERED** that, upon completion of the "special term" of supervised release, the defendant shall be placed on supervised release for the originally imposed term of 36 months. The conditions of this term of supervision shall be the same as those set out in the Judgment [Docket No. 145] entered on August 18, 2015. It is further

**ORDERED** that the defendant's Motion for Ruling [Docket No. 281] is **DENIED** as moot. It is further

**ORDERED** that the defendant's pro se Request for Compassionate Release [Docket No. 272] is **DENIED** as moot.

DATED August 10, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

8